# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JAVELER MARINE SERVICES, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-0670 |
| | § | |
| VILLERE CROSS and | § | |
| MATTHEWS MARINE, INC. | § | |
| OF MISSISSIPPI, | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

This contract and tort dispute is before the Court on the separate motions to dismiss for lack of personal jurisdiction filed by Defendants Villere Cross ("Cross") and Matthews Marine, Inc. ("Matthews Marine")[1] (collectively, "Defendants"). Cross also seeks dismissal for improper venue, or, in the alternative, to transfer venue pursuant to 28 U.S.C § 1404(a). These motions are ripe for review.[2] Having carefully

---

[1]Plaintiff Javeler Marine Services, LLC ("Javeler") sued Matthews Marine as "Matthews Marine, Inc. of Mississippi." Matthews Marine clarifies that its name does not include "of Mississippi." *See* Matthews Marine, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 8], at 1.

[2]Matthews Marine filed a Motion to Dismiss for Lack of Personal Jurisdiction ("Matthews Marine's Motion") [Docs. # 8 and # 8-1], to which Javeler responded ("Javeler's Response to Matthews Marine") [Docs. # 35 and # 35-1], and Matthews Marine replied ("Matthews Marine's Reply") [Doc. # 36]. Cross filed a Motion to Dismiss Based on Lack of Personal Jurisdiction, Motion to Dismiss Based on Improper Venue and, in the
(continued...)

considered the parties' briefing, the evidence in the record, and the applicable legal authorities, the Court **denies** Matthews Marine's Motion and **denies** Cross's Motion.

## I. BACKGROUND

### A. Facts

Javeler is a Texas company that specializes in dredging services and works on projects throughout the Gulf Coast region. Plaintiff's Original Complaint and Application for Injunctive Relief ("Complaint") [Doc. # 1], ¶¶ 1-2. Matthews Marine is a Mississippi company that competes with Javeler for projects in the Gulf Coast region. *Id.*, ¶¶ 3, 15; Affidavit of Thomas B. Matthews dated Nov. 7, 2014 ("Nov. 2014 Matthews Affidavit") [Doc. # 36-1], ¶¶ 2-3. Cross is an individual residing in Louisiana who worked for Javeler as a "Business Development and Project Manager" from September 10, 2010 to January 11, 2013. Complaint, ¶¶ 10, 12; Affidavit of Villere J. Cross ("Cross Affidavit") [Doc. # 27-2], ¶¶ 8, 12. In a letter dated December 27, 2012, Cross resigned from Javeler to begin working for Matthews Marine. Complaint, ¶¶ 15-16; Separation Letter [Doc. # 34-2], at ECF pages 7-8.

On December 12, 2012, approximately two weeks prior to Cross's resignation,

---

[2](...continued)
Alternative, Motion to Transfer Venue ("Cross's Motion") [Docs. # 27 and # 27-1], to which Javeler responded ("Javeler's Response to Cross") [Docs. # 34 and # 34-1], and Cross replied ("Cross's Reply") [Doc. # 37]. The Court cites to the memorandums filed in support of the motions and responses.

Cross and Javeler signed a Confidentiality Agreement stating that all of Javeler's confidential information would remain the property of Javeler, Cross would return confidential information to Javeler at the end of his employment, Cross would keep Javeler's information strictly confidential, and Cross would not use Javeler's information for any purpose in any manner other than for Javeler's benefit. Confidentiality Agreement [Doc. # 34-2], at ECF page 5, ¶ 1. The Confidentiality Agreement provided for Louisiana law as the governing law and that "[a]ny suit, action, or proceeding arising out of this Agreement shall be brought in either the United States District Court, Southern District of Texas, located in Harris County, Texas or in the state courts of the State of Texas, in Harris County." *Id.*, at ECF page 6, ¶ 5. This dispute arises out of Javeler's contentions that Cross and Matthews Marine violated the Confidentiality Agreement and committed various torts by improperly using Javeler's confidential information to bid on dredging projects in the Gulf Coast.

### B.    Procedural History

On March 17, 2014, Javeler filed this lawsuit against Cross and Matthews Marine in the Southern District of Texas. Javeler sues Cross for breach of the Confidentiality Agreement, breach of fiduciary duty, breach of the duty of loyalty, breach of confidence, violations of the Louisiana Unfair Trade Practices Act

("LUTPA"), violations of the Louisiana Uniform Trade Secret Act ("LUTSA"), and conspiracy. Complaint, ¶¶ 21-37, 43-45. Javeler sues Matthews Marine for violations of LUTPA and LUTSA, unjust enrichment, tortious interference with existing contracts, conspiracy, and aiding and abetting. *Id.*, ¶¶ 34-51.

## IV.  MATTHEWS MARINE'S RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.  Personal Jurisdiction Standard

"In diversity cases under 28 U.S.C. § 1332, the exercise of personal jurisdiction over a non-resident defendant must comport with both federal constitutional due process requirements and the long-arm statute of the state in which the district court is located." *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013); *accord Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Only one inquiry is required in Texas since the long-arm statute extends to the limits of federal constitutional due process. *Palermo*, 723 F.3d at 559. The constitutional requirements are satisfied if the nonresident purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts there such that it could reasonably anticipate being haled into court in the forum state, and if the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-88 (2011); *Clemens*, 615 F.3d at 378.

The plaintiff bears the ultimate burden of showing that the nonresident defendant is subject to personal jurisdiction in the forum state. *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 176 (5th Cir. 2013); *Clemens*, 615 F.3d at 378. On a motion to dismiss decided without an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Palermo*, 723 F.3d at 559; *Clemens*, 615 F.3d at 378. "'[T]he court must accept as true all uncontroverted allegations in the complaint and must resolve any factual disputes in favor of the plaintiff.'" *Ainsworth*, 716 F.3d at 176 (quoting *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012)).

Minimum contacts with Texas may result in a federal court's "general" or "specific" jurisdiction over a nonresident defendant. *See Clemens*, 615 F.3d at 378. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation

marks and citations omitted). Courts must determine whether "there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2854 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (alteration in original). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121; *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

The Fifth Circuit recently clarified that courts should apply a three-step analysis for the specific jurisdiction inquiry: "'(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The plaintiff bears the burden of proof for the first two prongs of the analysis, and the burden then shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. *Id.*

6

## B.    Matthews Marine's Contacts with Texas

Matthews Marine does not dispute that it bids and performs jobs in Texas. *See* Matthews Marine's Motion, at 3; Nov. 2014 Matthews Affidavit, ¶¶ 6-16; Affidavit of Thomas B. Matthews dated Apr. 1, 2014 ("Apr. 2014 Matthews Affidavit") [Doc. # 8-2], ¶¶ 21-22. Matthews Marine admits that it worked on several projects in Texas from 2010 to 2013. Apr. 2014 Matthews Affidavit, ¶¶ 21-22. Some of this work was performed as a subcontractor for Javeler's predecessor, Javeler Marine Construction Co., Inc. *Id.*, ¶ 21. Matthews Marine bid the Texas-based Sherwin Alumina project in 2013. Nov. 2014 Matthews Affidavit, ¶ 6. *See* Affidavit of Christopher Kahn ("Kahn Affidavit") [Doc. # 35-2], ¶ 12 (clarifying that this job was in Texas and stating "I also traveled to Texas to bid the Sherwin Alumina job on behalf of Javeler").[3] As recently as April 2014, Matthews Marine bid the Texas-based OxyChem project and performed dredging work for OxyChem in July and August 2014. Nov. 2014 Matthews Affidavit, ¶¶ 10-12.

Javeler alleges that Matthews Marine used Javeler's confidential information

---

[3]Matthews Marine contends that portions of the Kahn Affidavit and the Affidavit of Adam C. Zylman ("Zylman Affidavit") [Doc. # 35-5] should be stricken as inadmissible hearsay. *See* Matthews Marine's Reply, at 18-19. The alleged hearsay statements are portions of different paragraphs. The Court cites to some aspects of these affidavits, but does not rely on any of the alleged hearsay statements. Accordingly, Matthews Marine's request to strike statements from the Kahn and Zylman Affidavits as inadmissible hearsay is denied as moot.

to bid and perform projects in the Gulf Coast. For minimum contacts purposes, Javeler highlights two Texas projects, the Sherwin Alumina and OxyChem projects, for which Matthews Marine allegedly used Javeler's confidential information. *See* Javeler's Response to Matthews Marine, at 12-13; Kahn Affidavit, ¶¶ 11-13. The Court, in an exercise of caution, relies only on Matthews Marine's conduct that occurred before Javeler filed its complaint on March 17, 2014.[4] The Court, accordingly, will not consider for minimum contacts and personal jurisdiction purposes Matthews Marine's actions regarding the OxyChem project, which Matthews Marine bid in April 2014 and performed in July and August 2014. The Court limits its analysis to Matthews Marine's actions regarding the Sherwin Alumina project, which Mathews Marine bid prior to the filing of Javeler's Complaint.

Javeler points to an email exchange between Cross and Matthews Marine in November 2013 as evidence that Matthews Marine wrongfully used Javeler's confidential information. Matthews Marine in that exchange appears to accept Javeler's confidential information from Cross for use in preparing its bid for this

---

[4]The Fifth Circuit has recognized that "the relevant time for determining jurisdiction is the filing of the complaint." *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990); *see also Glazier Grp., Inc. v. Mandalay Corp.*, Civ. Action No. H-06-2752, 2007 WL 2021762, at *9 (S.D. Tex. July 11, 2007) (Rosenthal, J.) ("In the Fifth Circuit, postcomplaint activities cannot create specific personal jurisdiction that was lacking when the lawsuit was filed."). However, there is a real question as to the relevancy of these cases when the post-complaint activities are a continuation of the alleged tort. The Court does not reach this issue.

project.  *See* Email from Cross to Shaw Matthews and Tom Matthews dated Nov. 11, 2013 [Doc. # 35-3], at ECF page 1; Email from Shaw Matthews to Cross dated Nov. 12, 2013 [Doc. # 35-4] (collectively, "Sherwin Alumina Project Emails").

By bidding the Sherwin Alumina project allegedly using Javeler's confidential information, Matthews Marine "purposely directed" its conduct toward Texas.  *See Monkton Ins. Servs., Ltd.*, 768 F.3d at 432.  Matthews Marine's conduct in bidding the Sherwin Alumina project constitutes "'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *See Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2854 (quoting *Hanson*, 357 U.S. at 253 (1958)) (alteration in original).  In the Fifth Circuit, "[a] single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted . . . ."  *Moncreif Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).  Javeler, thus, has satisfied its burden on the first-prong of the Fifth Circuit's specific jurisdiction analysis to establish a *prima facie* case that Matthews Marine had minimum contacts with Texas.  The Court turns to the second-prong of the Fifth Circuit's analysis, *i.e.*, whether these contacts gave rise to the claims asserted.

C. <u>**Whether Javeler's Claims Arise Out of Matthew's Marine's Forum-Related Contacts**</u>

Matthews Marine argues that Javeler's claims do not arise out of the Texas-

based Sherwin Alumina project. Matthews Marine's Reply, at 10-11. Matthews Marine asserts that the Sherwin Alumina project "will never be the basis of the lawsuit" because "it is not in the Complaint." Matthews Marine's Reply, at 11. Javeler's Complaint states that it does business in "Texas, Louisiana, Florida, Georgia, and Mississippi." Complaint, ¶ 9. Javeler further alleges that Matthews Marine works "in the Gulf Coast region." *Id.*, ¶ 11. On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court may consider the fruits of "'any combination of the recognized methods of discovery.'" *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The Court is not restricted to the pleadings, and the affidavits and exhibits submitted with Javeler's Response constitute relevant and admissible evidence of specific Matthews Marine Texas projects.

Matthews Marine argues that logic dictates that the Sherwin Alumina project cannot be considered in the personal jurisdiction analysis because Javeler was awarded the project. Matthews Marine's Reply, at 10-11. The Court is unpersuaded. Misuse of Javeler's information by Matthews Marine and Cross is the essence of Javeler's claims. Javeler's Complaint prominently seeks injunctive relief to enjoin Matthews Marine and Cross from using its confidential information and seeks return of any Javeler's confidential information in their possession because Matthews Marine

has allegedly misused it to bid one or more projects. Complaint, at 17. Matthews Marine's alleged misuse of Javeler's confidential information to bid the Texas-based Sherwin Alumina project thus gives rise to Javeler's claims, even if Matthews Marine's bid was unsuccessful.

Finally, Matthews Marine contends that the Sherwin Alumina project emails allow "one of two conclusions: (1) Matthews Marine is not using and never had any intention of using Javeler's confidential information, or (2) Matthews Marine is the worse conspirator of all time, having waited over ten months to make use of Javeler's confidential information." Matthews Marine's Reply, at 11. These arguments are best characterized as factual disputes related to the merits of Javeler's claims. They do not alter the Court's personal jurisdiction analysis because the Court must resolve all factual disputes in favor of the plaintiff, Javeler. *See Ainsworth*, 716 F.3d at 176; *ITL Int'l, Inc.*, 669 F.3d at 496. The Court concludes that Javeler has satisfied its burden of making a *prima facie* showing that Matthews Marine's minimum contacts with Texas give rise to the claims asserted and satisfy the requirements for specific jurisdiction in Texas. *See Palermo*, 723 F.3d at 559; *Clemens*, 615 F.3d at 378-79.[5]

_____

[5]Since Matthews Marine had the minimum contacts required for specific jurisdiction, the Court does not decide whether there is general jurisdiction. However, the Court notes that, for foreign corporations like Matthews Marine, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd.*, 768 F.3d at 432; *accord Daimler AG v. Bauman*, 134 (continued...)

11

### D.     Whether the Exercise of Personal Jurisdiction is Fair and Reasonable

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945)). Fifth Circuit courts consider  "'(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.'" *McFadin v. Gerber*, 587 F.3d 753, 760 (quoting *Luv n' care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006)).

"In determining whether or not exercise of jurisdiction is fair and reasonable,

---

[5](...continued)
S. Ct. 746, 760 (2014). It is undisputed that Matthews Marine is incorporated in Mississippi and has its principal place of business there. Complaint, ¶ 3. Javeler argues that the Court has general jurisdiction based on Matthews Marine's website and its work in Texas. *See* Javeler's Response to Matthews Marine, at 20-21. These arguments are unpersuasive. In similar cases, courts have held that a non-interactive website and limited business contacts were insufficient to meet the plaintiff's burden to plead specific facts showing that the nonresident defendant's contacts with the forum state were so "continuous and systematic" as to render it "at home." *See Daimler*, 134 S. Ct. at 761; *Monkton Ins. Servs., Ltd.*, 768 F.3d at 432; *Locke v. Ethicon  Inc.*, – F. Supp. 3d. – , Civ. Action No. 4:14-CV-2648, 2014 WL 5819824, at *7 (S.D. Tex. Nov. 10, 2014) (Hoyt, J.).

defendants bear the burden of proof and 'it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown.'" *Id.* at 759-60 (quoting *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).  The parties did not brief the issue of whether this Court's exercise of personal jurisdiction over Matthews Marine would be unfair or unreasonable.  The Court concludes that Matthews Marine has failed to satisfy its burden.  Matthews Marine has not established that suit in the Southern District of Texas would contravene notions of fair play and substantial justice.  *See id.*; *Burger King Corp.*, 471 U.S. at 477.  Accordingly, the Court has personal jurisdiction over Matthews Marine and denies Matthews Marine's motion to dismiss.

## III.  CROSS'S RULE 12(b)(2) AND RULE 12(b)(3) MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

The Confidentiality Agreement signed by Cross and Javeler contained a forum-selection clause stating, "Any suit, action, or proceeding arising out of this Agreement shall be brought in either the United States District Court, Southern District of Texas, located in Harris County, Texas or in the state courts of the State of Texas, in Harris County."  Confidentiality Agreement, at ECF page 6, ¶ 5.  The parties do not dispute that the claims in this case arise out of this agreement.  Venue will be proper in this case, and the Court will have personal jurisdiction over Cross, unless the Court

determines that the forum-selection clause should be set aside.[6]

## A. Effect of the Forum-Selection Clause

### 1. Standard for Enforcing Forum-Selection Clauses

The Fifth Circuit has recognized that there is a "strong presumption in favor of enforcement of forum selection clauses." *Calix-Chacon v. Global Int'l Marine, Inc.*, 493 F.3d 507, 513 (5th Cir. 2007) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). A forum-selection clause is mandatory, as opposed to permissive, if it "clearly demonstrate[s] the parties' intent to make that

---

[6]Matthews Marine was not a signatory to the agreement. Javeler nevertheless argues that the forum-selection clause should be enforced against Matthews Marine because the claims against Matthews Marine and Cross are "almost entirely interdependent." Javeler's Response to Matthews Marine, at 16. This argument harks to the Fifth Circuit's holding that, under a theory of equitable estoppel, a non-signatory defendant may enforce an arbitration or forum-selection provision against a signatory plaintiff when the plaintiff's claims against the non-signatory are "intertwined with, and dependent upon," the agreement. *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 525 (5th Cir. 2000). However, the Fifth Circuit has rejected this "intertwined claims" theory of equitable estoppel when a signatory plaintiff attempts to enforce an arbitration or forum-selection clause against a non-signatory defendant, as Javeler seeks here. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003). Javeler cites to language from Texas cases that involve plaintiffs attempting to avoid the enforcement of forum-selection clauses based on the presence of non-signatory defendants. Javeler's Response to Matthews Marine, at 17 (citing *In re Int'l Profit Associates, Inc.*, 274 S.W.3d 672, 680 (Tex. 2009); *In re Emex Holdings L.L.C.*, No. 13-11-00145-CV, 2013 WL 1683614, at * 6 (Tex. App.–Corpus Christi Apr. 18, 2013, orig. proceeding) (en banc)). These cases and the reasoning therein are inapplicable to the issue at bar, a plaintiff attempting to enforce a forum-selection clause against a non-signatory defendant. Finally, Javeler claims that refusing to enforce the forum-selection clause against Matthews Marine will "permit Cross to avoid his prior contractual commitments regarding jurisdiction and venue in Texas." Javeler's Response to Matthews Marine, at 17. This argument is academic as the Court has found personal jurisdiction over Matthews Marine independent of enforcement of the forum-selection clause against Cross.

jurisdiction exclusive." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004). The parties do not dispute that the forum-selection clause at issue is mandatory. The Court agrees that the phrase "shall be brought in" creates a mandatory forum-selection clause. *See Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995) (per curiam) (finding that a forum-selection clause was mandatory that stated "[t]he legal venue of this contract and any disputes arising from it shall be settled in Dallas County, Texas"); *Top Branch Tree Serv. & Landscaping v. Omni Pinnacle, LLC*, Civ. Action No. 06-3723, 2007 WL 1234976, at *2 (E.D. La. Apr. 10, 2007) (Barbier, J.) (finding that the phrase "shall be the court of original jurisdiction" created a mandatory forum-selection clause).

For mandatory forum-selection clauses, "[a] forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs, Inc.*, 46 F.3d at 15 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)); *accord Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir. 2004). "Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum;

(3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)); *accord Calix-Chacon*, 493 F.3d at 514. The party seeking to set aside the forum-selection clause bears a heavy burden of proof to establish unreasonableness. *Haynsworth*, 121 F.3d at 963; *see also Calix-Chacon*, 493 F.3d at 514.

## 2. Enforcement of the Forum-Selection Clause is Reasonable

Cross argues that enforcing the forum-selection clause would be "unreasonable" because the contract was formed and performed in Louisiana, and Javeler has not shown that Cross had the "minimum contacts" with Texas required for specific personal jurisdiction. Cross's Motion, at 17; Cross's Reply, at 3, 7. In light of the strong presumption in favor of enforcing forum-selection clauses, the Fifth Circuit has limited the scope of the term "unreasonable" for purposes of setting aside a forum-selection clause. *See Haynsworth*, 121 F.3d at 963; *Calix-Chacon*, 493 F.3d at 514. To be unreasonable, the forum-selection clause must have been the product of fraud or overreaching, or enforcement would either deprive the plaintiff of her day in court or a remedy or "contravene a strong public policy" of the forum state. *See Carnival Cruise Lines*, 499 U.S. at 595; *Haynsworth*, 121 F.3d at 963; *Calix-Chacon*, 493 F.3d

at 514.  Cross does not meaningfully explain how his arguments meet the Fifth Circuit's standard.  While traveling to Texas for trial or isolated other litigation-related matters may be inconvenient for Cross, a resident of Louisiana, the Supreme Court has held that inconvenience and expense is not enough to make a reasonable forum-selection clause unenforceable.  *See Carnival Cruise Lines*, 499 U.S. at 594. The Court concludes that Cross has not met his heavy burden to establish that enforcement of the forum-selection clause would be unreasonable.  Accordingly, the Court concludes that venue is proper in the Southern District of Texas, *see Seattle-First Nat'l Bank v. Manges*, 900 F.2d 795, 799 (5th Cir. 1990), and the forum-selection clause conveys personal jurisdiction over Cross.  *See Kevlin Servs., Inc.*, 46 F.3d at 15.  Cross's Rule 12(b)(2) and Rule 12(b)(3) motions to dismiss are denied.

### B.    **Minimum Contacts Analysis**

Alternatively, the Court finds that it has specific personal jurisdiction because Cross, on behalf of Matthews Marine, bid the Sherwin Alumina project.  *See* Kahn Affidavit, ¶ 12 ("While speaking to the Sherwin Alumina representative responsible for conducing the bidding process, I noticed Cross' [sic] Matthews Marine's business card sitting on the Sherwin Alumina representative's desk.").  To do so, Cross allegedly used Javeler's confidential information.  *See* Sherwin Alumina Project Emails.  As concluded above with respect to Matthews Marine, Cross's participation in bidding on the Sherwin Alumina project establishes a *prima facie* showing of

"minimum contacts" such that Cross could "reasonably anticipate being haled into court in the forum state." *See J. McIntyre Machinery, Ltd.*, 131 S. Ct. at 2787-88; *Clemens*, 615 F.3d at 378. The Court has considered Cross's other arguments regarding minimum contacts and finds them unavailing.

Cross also argues that the Court's exercise of jurisdiction over him would "offend traditional notions of fair play and substantial justice." *See* Cross's Motion, at 14-16. Cross argues that it would be burdensome to force him, a Louisiana resident, to defend this suit in Texas; Texas only has a minimal interest in this case because the Confidentiality Agreement was executed in Louisiana and provides for Louisiana law; Javeler's relief is not connected to Texas because Javeler seeks injunctive relief and none of the defendants reside in Texas; it is inefficient to exercise jurisdiction in Texas because none of the Defendants reside in Texas; and this case is about an employment contract executed in Louisiana. *Id.* The Court is unpersuaded that these arguments rise to the level of the "rare" situation where it would be unfair to exercise jurisdiction even though the minimum contacts requirement is met. *See McFadin*, 587 F.3d at 760.

## III.  CROSS'S MOTION TO TRANSFER

### A.  Section 1404(a) Standard for Transfer

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc.*, 487 U.S. at 29 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The party seeking to transfer venue bears the burden to "satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'"  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (quoting 28 U.S.C. § 1404(a)) (alteration in original).

"If the action could have been brought in the alternate venue, the court must then weigh a series of non-exhaustive private and public interest factors, none of which is given dispositive weight."  *LeBlanc v. C.R. Eng., Inc.*, 961 F. Supp. 2d 819, 830 (N.D. Tex. 2013) (citing *In re Volkswagen of Am., Inc.*,  545 F.3d at 315).[7]  A forum-selection clause is a "significant factor that figures centrally in the district

---

[7]The private factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315(quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)) (internal quotation marks omitted) (alteration in original).

court's calculus." *Stewart Org., Inc.*, 487 U.S. at 29. "Because the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) (internal citations and quotation marks omitted).

The Supreme Court recently held that a mandatory forum-selection clause alters the § 1404(a) analysis in cases where the defendant seeks to enforce that forum-selection clause and to transfer the case to the contractually agreed forum. *See Atlantic Marine*, 134 S. Ct. at 581-83. The Supreme Court held that "presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways": (1) "the plaintiff's choice of forum merits no weight"; (2) "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests"; and (3) "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules–a factor that in some circumstances may affect public-interest considerations." *Id.* at 581-82. The parties have not briefed how *Atlantic Marine* applies in this case where a plaintiff filed suit in the contractually agreed upon forum and the plaintiff, not the defendant, seeks to enforce the mandatory

forum-selection clause. While it is likely that the appellate courts will give the forum-selection clause great weight in these circumstances, the Court does not definitively decide this issue. The Court concludes instead that Cross's motion to transfer should be denied under the traditional § 1404(a) analysis.

**B.      Section 1404(a) Analysis**

Cross argues that the § 1404(a) factors weigh in favor of transfer because most of the witnesses are in Louisiana; Cross obtained the allegedly confidential information in Louisiana; Cross lives and works in Louisiana; the Southern District of Texas has a busier docket than the Western District of Louisiana; Louisiana has a localized interest in deciding this case because the contract was executed and performed in Louisiana; and a Louisiana district court is better equipped to apply Louisiana law (which is the governing law of the Confidentiality Agreement). Cross's Motion, at 20-22; Cross's Reply at 8-9. Javeler counters that most of the evidence in this case actually is located in Texas where the one or more jobs that Defendant Cross bid using Javeler's confidential information were located; Javeler is a Texas company; the majority of Javeler's witnesses are in Texas; and Texas has a localized interest because Cross and Matthews Marine allegedly committed torts and a breach of contract in Texas by soliciting business from Texas companies using improper means. Javeler's Response to Cross, at 19-21. Moreover, Javeler asserts that the Court should give strong deference to the mandatory forum-selection clause designating the

Southern District of Texas as the appropriate forum for resolving disputes. *Id.*

The Court concludes that this district is a proper and reasonable venue for this case. The Court is unpersuaded that the majority of witnesses and evidence will necessarily come from Louisiana, given that a focus of this case is projects bid and/or performed in Texas. Cross essentially argues that it is more convenient for this case to be in the district where he resides instead of the district where Javeler resides. Transfer is not appropriate if the "'only practical effect is to shift inconvenience from the moving party to the nonmoving party.'" *Rimkus Consulting Grp., Inc. v. Cammarata*, Civ. Action No. H-07-0405, 2007 WL 1520993, at * 11 (S.D. Tex. May 22, 2007) (Rosenthal, J.) (quoting *CIT Grp./Commercial Servs., Inc. v. Romansa Apparel, Inc.*, Civ. Action No. 02-1954, 2003 WL 169208, at *4 (N.D. Tex. Jan. 21, 2003) (Solis, J.)).

Both Texas and Louisiana have local interests in deciding this case. While a Louisiana court may be well equipped to apply Louisiana law, this Court also can do so. Any differences in the size of the docket in the Western District of Louisiana and Houston do not outweigh the other pertinent considerations.[8] Most significantly, the

---

[8]According to the Federal Judicial Caseload Statistics for 2014, there are 4,752 civil and 5,362 criminal cases pending in the Southern District of Texas, compared to 4,951 civil and 234 criminal cases in the Western District of Louisiana. *See U.S. District Courts–Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending March 31, 2013 and March 31, 2014*, U.S. C T S ., http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadSt (continued...)

Supreme Court has recognized that mandatory forum-selection clauses should be given strong deference in the § 1404(a) analysis. *See Atlantic Marine*, 134 S. Ct. at 581-83; *Stewart Org., Inc.*, 487 U.S. at 29. In light of these considerations, the Court exercises its discretion to deny Cross's motion to transfer.

## V.    CONCLUSION AND ORDER

The Court has determined that it has personal jurisdiction over Defendants Cross and Matthews Marine and that venue is proper in the Southern District of Texas. Accordingly, it is hereby

**ORDERED** that Matthews Marine's Motion to Dismiss for Lack of Personal Jurisdiction [Docs. # 8 and # 8-1] is **DENIED**. It is further

**ORDERED** that Cross's Motion to Dismiss Based on Improper Venue and, in the Alternative, Motion to Transfer Venue [Docs. # 27 and # 27-1] is **DENIED**. Finally, it is

**ORDERED** that the parties will file a new Joint Discovery/Case Management

---

[8](...continued)
atistics/2014/tables/C00Mar14.pdf (last visited Nov. 24, 2014); *U.S. District Courts–Criminal Cases Commenced, Terminated, and Pending (Including Transfers) During the 12-Month Periods Ending March 31, 2013 and 2014*, U.S. CTS., http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadSt atistics/2014/tables/D00CMar14.pdf (last visited Nov. 24, 2014). However, the sizes of the dockets in the Houston Division of the Southern District of Texas and Western District of Louisiana are quite similar. There are far more judges in Houston to handle equivalent numbers of civil cases, and the vast majority of criminal filings in the Southern District of Texas are not in the Houston Division.

plan by **January 5, 2015**.  The status conference in this case remains set for **January**

**12, 2015 at 1:30 p.m.**

SIGNED at Houston, Texas, this <u>4th</u> day of **December, 2014**.

Nancy F. Atlas
United States District Judge